Weng v. Lynch

BIA
Wright, IJ
A201 035 132

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of April, two thousand sixteen.

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge,*
PETER W. HALL,
SUSAN L. CARNEY,
*Circuit Judges.*

_____

LIN BIN WENG, AKA LINBIN WENG,
*Petitioner,*

v.                                          15-1196
                                            NAC
LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
*Respondent.*

_____

FOR PETITIONER:         Lewis G. Hu, New York, New York.

FOR RESPONDENT:         Benjamin C. Mizer, Deputy Assistant
                        Attorney General; Francis Fraser,
                        Senior Litigation Counsel; Kate D.
                        Balaban, Trial Attorney, Office of
                        Immigration Litigation, United
                        States Department of Justice,
                        Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Lin Bin Weng, a native and citizen of China, seeks review of a March 25, 2015 decision of the BIA affirming a December 17, 2012 decision of an Immigration Judge ("IJ") denying Weng's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Lin Bin Weng,* No. A201 035 132 (B.I.A. Mar. 25, 2015), *aff'g* No. A201 035 132 (Immig. Ct. N.Y.C. Dec. 17, 2012). We assume the parties' familiarity with the underlying facts and procedural history in this case.

In the circumstances of this case, we consider both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

Under the REAL ID Act of 2005, the agency may, in light of "the totality of the circumstances," base an adverse credibility determination on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of her account,

2

and inconsistencies in her statements, "without regard to whether" those inconsistencies go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008). Under the "substantial evidence" standard of review, "we defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167.

The agency's adverse credibility determination against Weng is sound. The agency justifiably relied on inconsistencies between what she said at an interview with border patrol agents and her asylum application. "We exercise caution when reviewing statements made within the context of airport interviews, recognizing that because such interviews '*may* be perceived . . . as coercive or threatening,' aliens may 'not be *entirely forthcoming* in the initial interview.'" *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 396 (2d Cir. 2005) (quoting *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir. 2004)); *see also Ming Zhang v. Holder*, 585 F.3d 715, 724-25 (2d Cir. 2009) (requiring close scrutiny of credible fear interviews, but deeming reliable one that was typewritten, conducted with an interpreter, demonstrated that the

3

interviewee understood the questions).

Here, the agency was entitled to credit Weng's border patrol interview. Weng signed each page of the interview transcript. The questions, posed in Weng's native Mandarin, were open-ended and "designed to elicit the details of an asylum claim," *Ramsameachire*, 357 F.3d at 180 (internal quotation marks omitted). They include, "Do you fear torture, persecution, or harm from the Chinese Government if you are removed to China?" At the merits hearing, Weng confirmed that she understood the questions asked during the border interview. In her brief, Weng argues that she cannot be blamed for omitting mention of the forced abortion because the officer did not ask "why or on what basis did she apply for political asylum." But that argument is merely semantic; the officer asked a more open-ended question regarding why she feared harm from the Chinese government.

During the interview, Weng failed to mention that family planning officials forcibly aborted her pregnancy. Instead, she asserted religious persecution as grounds for her asylum claim, grounds that she dropped in her asylum application. In finding that Weng was not credible, the IJ was entitled to "rely on the commonsense observation that it is inconsistent for a petitioner to respond to the same question about the nature of

4

his asylum claim with two entirely different responses." *Yun-Zui Guan*, 432 F.3d at 398. Moreover, for the purpose of assessing credibility, an omission is the functional equivalent of an inconsistency. *Xiu Xia Lin*, 534 F.3d at 166 n.3.

Weng's explanations for having omitted mention of the forced abortion varied: first, she said that "there were many people waiting to be questioned," and that she described the incident with the neighbor because it was more recent. She said she "did not get a chance to mention" the abortion. She also said (as transcribed) that in her "subconscious I don't to mention that" because she does not "like to mention the abortion incident to other people." Some of these explanations may be plausible; but none would compel a reasonable adjudicator to credit it. *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (stating that the agency is not required to credit an explanation that is merely plausible). When the interviewer asked whether she had anything else to say, Weng responded, "No."

Weng argues that the IJ misinterpreted her explanations. The IJ professed to be confused by Weng's statement that she did not mention the abortion due to her "self-conscience." The transcript says "subconscious." In her brief, Weng explains that she felt "self-*conscious*" about discussing the abortion

5

in front of other people, and argues that the IJ should have known that there was a translation error. But the IJ was not obligated to draw that inference. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). In any event, confusion over Weng's phrasing was not the only basis for the IJ's rejection of Weng's explanation: as the IJ noted, Weng's explanations varied each time she was questioned about the omission.

The IJ also cited an inconsistency between Weng's border patrol interview and application. At the interview, Weng alleged that she feared persecution "because of my religion." Her asylum application said nothing about religion, and at her merits hearing she disclaimed any problems arising from her religion. Absent from Weng's brief is any argument about this inconsistency. The agency reasonably relied on it in finding her not to be credible. *Yun-Zui Guan*, 432 F.3d at 398.

Given the omission from Weng's border patrol interview and the inconsistencies between it and her asylum application, the totality of the circumstances supports the agency's adverse credibility determination. Weng's applications for asylum, withholding of removal, and CAT relief were based on the same

factual predicate, and so the adverse credibility determination is dispositive as to all three. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7